I would like to reserve three minutes for rebuttal. In this case we refer to the rates being claimed as being phantom rates but it might be more appropriate to call them fantasy rates because they are not based on anything tangible. They are simply a rate that the parent should receive but not a rate that is based on anything real and tangible. And the purpose of the statute referring to a prevailing rate is we want to provide a level playing field based on a free market so that parents can have adequate representation in cases but there is a plethora of cases that explain that that does not mean there should be a windfall or even that the rates paid should be at the highest levels of the largest firms in the country. I thought the trial court had multiple affidavits including from the two attorneys here and from others in the community about the rates themselves. I am talking about the fee rate and not the conclusive determination. There is not a single declaration of which I am aware of a rate that was actually paid by a client. All of these rates are built on air. A foundation of sand basically. You say I am worth this amount as Judge Gilford said in the quote we put in our brief. I am worth this amount. Somehow a court ends up with a dollar amount of X. You go to your next case and you say well that court gave you X. Is your position that a rate that is based on what was used in a prior settlement or in a prior fee award that is sand and cannot be considered? No. A settlement is a different story but on the issue of a prior court award it can be used but you have to look at how that award was made in that case. For example, the same district court judge in this case had issued award in a case called Antelope Valley to the same lawyers as in this case. If you look at the underlying decision in that case, it is based on nothing. We were not party to those other cases where maybe nobody brought up the problem. What about the settlements? You were clearly a party right to the settlements. Which settlements your honor? The various settlements the trial court referenced between LAUSD and these two attorneys. To be clear, are there rates in settlements? There is no agreed upon rate. What happens is the other side might say I want $10,000 and we might say we'll give you $5,000. Fair point but I thought they received similar awards so that would be circumstantial evidence. Is that not accurate? No, that's not accurate. We put in our own evidence of claimed rates in settlement just to show that these particular lawyers are seeking a claimed rate that is beyond even what the other lawyers were claiming. But in none of those cases was there ever an actually agreed upon rate. I'm sorry, go ahead. You asked a question. I think your point is that some of the rates which were quoted here reflect that a parent is in a situation where he's earning a great rate. Judge Beyer, we're having trouble hearing your audio. Yes, I'm having that trouble too. I don't have my mute on. Okay, I can hear better now. Okay. Now, I take it your point is that since none of the parents in any of the other cases actually paid the rate to the attorney, the rate is false. If you take your point, it means that an impecunious parent who can't pay an attorney can never get an attorney who will be paid if he's successful. We're not actually making that point, your honor. We're not saying that the parent has to have paid a rate. We're saying that you have to find someone who's paid in a similar practice area. So, for example, this case was before an administrative law judge at the Office of Administrative Hearings. And the Office of Administrative Hearings hears all sorts of cases. They hear teacher termination cases, licensing cases. That's a field of administrative law for which there are many paid lawyers. So you need to get a, we need to find a rate that somebody actually gets paid. It doesn't have to be the parent paying the rate. That's one possibility. Another possibility is another lawyer in a similar practice area. Or the third possibility is to also look at the rates paid to the district council. But there has to be a way of having an objective rate because, your honor, for example, I know you've expressed concerns about Chevron deference and how we can't just abandon the role of the judiciary. It's the same thing here. Congress has said, we want you to look at the prevailing rate. It's in the statute. Unlike 1988 and Title VII, they don't even use the words prevailing rate. That emerged through the cases. But what is happening here is we've abandoned that and we said to the court, do whatever you want. And so the court is coming up with a rate. And then in the next case, they say, well, that judge gave this amount, so we should give that amount too. So we've now spiraled that. Eventually what you're going to have is the rates are in a parabola. And that's the reason we brought this case because eventually it's going to be, it's already out of control, but it's going to be completely out of control. There's no check on it at all. But the area of IDEA practice is different from other areas of administrative law. You would concede that, right? Well, it's different, but it's more the same as administrative law than it is jury trial litigation, which is what was submitted as affidavits. Why would you compare administrative law rates by people who are fighting, for instance, the revocation of a liquor license and actually to pay for it? Because one time in this country, you could have a bar that was open. Let me clarify that. Sorry to interrupt you, but what I see, that's a different area of practice totally from the one we have here. So what I'm saying is that they have to bring in evidence of similar area of administrative law. Well, first of all, you're right. It's not just liquor license. You're talking about teacher licenses, teacher termination hearings where these are very similar. type of administrative agency. Yes, the subject matter is different, but the practice area in general is the same. But we're not saying that's the only way. That's one way. Another way is to look at rates that are paid to the same lawyers. Some of them may have fee-paying clients in special ed cases. Some may have fee-paying clients in other practice areas. So, counsel, what was wrong with the declarations from other attorneys in the community saying their fees are in line with that? Because it was concluded there's no evidence that anyone ever got paid that rate, and I will tell you they never do. They've never got nobody, and there's no evidence in the record, Your Honor, of a single person getting actually paid the rate that they're purporting in their declarations. They're simply saying this is the rate I claim. I've gotten this rate awarded by this judge or that judge, but there's no actual rate, and I tell you that the market would be much, much lower. If they needed to get paid a rate, it would not be $700 an hour. It would be $300 an hour or $400. You answered my question. My question was, you have any case authority in the Ninth Circuit saying that prevailing rates must, in order to get a prevailing rate, you must have evidence that the rate was actually paid by a client rather than as a result. Well, it's a prevailing rate. There is authority. You can look at Jordan v. Multnomah County, and that one talks a little bit about how there has to be some evidence in support of the conclusory declaration that these are rates that are actually reasonable, and that's one case. That would be 815 F. Seck and 1258. Does that evidence have to be, in the Jordan case, evidence of a private party reaching into his pocket and paying? I don't know if they come out and say that in that case, but I can tell you, for example, the Supreme Court, which I think we would agree is even beyond the Ninth Circuit, in Purdue v. Kenney, the Supreme Court looked at the rates claimed, and they pointed to the fact that the district judge found the rates to be reasonable. If you look in the district case, which is 454 F. Seck and 1260 at 1285 to 1286, those are paid rates that were paid to the lawyers. But, counsel, payment of rates can be evidence of that, but that's not answering Judge Bea's question, which is, is it required in some way? Of course it can be evidence, just like anything can be evidence. Yes, it's required. The sister circuits, we cited at page 18 of our brief, your honor, a series of cases in the Second Circuit, the D.C. Circuit, the Eleventh Circuit, all talking about how someone has to actually be paid. It's not a prevailing rate, your honor, if a judge just decides, oh, I think that's a good rate. What if it was awarded in 100 cases? Would it be a prevailing rate? No, it would be a prevailing rate if one or more of those cases actually had evidence that somebody in the market paid the rate. Then if they all chose that one, that's what the problem has happened here, your honor. We don't take very many cases up from LA Unified. This one we took up because this one has gotten out of control. No one has now, no one has previously identified this problem because up until now, they haven't overreached on the plaintiff's side, and now they're overreaching. These fees, they realize that it's a house of cards, and so the rates are escalating like a parabola, as I said. So now we have to bring this case up and say, no, it has to be based on something real, and that's why it says prevailing rate. It has to be prevailing in the community. Doesn't the court take that into consideration when it reduces the rate by $50 an hour and we are going by a 20% margin? Absolutely not, your honor. There's not a shred of evidence in the record of anyone ever getting paid this rate. This is a disaster. We're delegating to the court basically unfettered and unpredictable power to set rates. Parties cannot plan their affairs if they have to just rely on the court making its own decision untethered to the market as to what rates will be. I see I'm at my three minutes, so with your permission, I was going to reserve the rest. Thank you, counsel. We'll hear now from Mr. Tomasian. You're muted. You need to unmute. I'm sorry about that. Did you get me now? Yes, now we can hear you. Counsel utilized a lot of colorful language to describe the problem, but the problem is not with how the law presents questions. There's some audio interference. I think, Mr. Green, can you mute your mic? There is no confusion in the law in the precedent that this court must follow in terms of how to go about determining whether a district court abused its discretion in arriving at a fair rate under the law. Counsel is implying in his statements that previous decisions by district court judges awarding determinations in favor of Mr. Crook and I, as well as other attorneys, somehow didn't get the law right. Is he correct in his assertion when he says that none of the declarations that were submitted showed that any of the declarants had actually been paid that rate as a market rate by a client? Absolutely not, Your Honor. I presented my own declarations indicating that my clients pay at the rate that I was charging, $600 per hour, which is the awarded rate for the years 2015, 16, and 17. Did they pay that for IDEA cases or in general? Both. I also have clients who are business clients who pay that amount in other cases. I don't charge different rates. But individual parents also pay that. I'm sorry to interrupt. As part of every settlement, and there have been dozens of settlements over these years with the district, with this particular district, I submitted my invoices at the rates that I stated, $600 and $650. And we have negotiated the hours. You know, the discussions have been, you shouldn't have taken this long for this particular service, etc. And then some portion of the bill hasn't been paid by the district. That portion is paid by the parents. But the agreement I have with the parents is they pay me the portion that the district hasn't paid me. And they have, in fact, done that and they continue to do that. They've done that for years. That's been my practice. So there is absolutely evidence in the record that at least this person, who specializes in special education with over 80% of his practice being in that field, charges his clients the same rate that he charges districts. There was also other evidence in the record of actual payments and actual charging by clients. Two clients, sorry. And that has to do with the parole declaration, which at 1117-1137 outlines a number of cases and law firms which, you know, and the rates that they charge for similar types of services. At 1149 and 1205, there is evidence of surveys in the LA area that talk about the rates that are prevalent for similar services. I want to go back to a problem that counsel has presented that I want to clarify for the court to the extent it needs clarifying. And that is this idea that prior determinations by district courts are not relevant for purposes of arriving at the prevailing rate. They are very relevant. The Ninth Circuit has held over the last 30 years in many, many cases that I've cited in the briefing. That rate determinations, especially rate determinations applicable to the litigants at issue, are very relevant and they are sufficient. They're a satisfactory basis for arriving at a prevailing rate. And that starts with United Steelworkers of America at 407. And a number of other cases, you know, have adopted that standard. So rate determinations by courts are, especially in areas of the law where clients generally don't pay for illegal services. That's why these fee-shifting statutes were enacted to allow... Just out of curiosity, and I know you say you have evidence of this, so it might be a moot point, but do you agree with your friend on the other side that in order to be a prevailing rate, it has to be paid by a client? Absolutely not, Your Honor. The law is very clear that the way you look at prevailing rates is a number of different ways. One would be, as Your Honor, you stated earlier, one way would be to show an actual payment by a client. But the law has been very clear, going all the way back to Blum, that that's not a requirement. That's not something that if you don't have that, you somehow cannot get your prevailing rate. Fee determinations are a critical component of this measure. Courts throughout the country over the last 40, 38 years have been utilizing that method. And counsel is now, you know, coming forward and saying this is a big problem. We have to address it. But counsel is not explaining how the district over the last four years paid me at the rate and more that the court, the district court determined was a reasonable rate. Another thing the counsel is not addressing is just a couple of months prior to this determination. In this case, another district court case came down involving Mr. Crook and I were were these very rates, 600 and 650 were were found to be reasonable. So his counsel is suggesting that he can come into this case and attack the determinations and the basis for those determinations by these judges in previous cases. I think that, you know, the suggestion that they just came up with a number is inaccurate. Every single case is based on evidence. And that evidence is considered by the court. There is always, you know, counter evidence and determinations are made based on that evidence, not based on some attempt by a judge to decide, oh, I think this would be a good rate, which is kind of what he's suggesting. Every single decision that's been attached to my declarations show that reasoning. Counsel, can I ask you one other question? I want to just change gears for a second on you. In footnote 10 of the Supreme Court's opinion and Commissioner V. Jean, you're familiar with that, correct? Yes. They say that fees on fees should be reduced a similar amount as the underlying fees. But here, am I correct? There was not a 20 percent reduction. There was in the underlying fees, but not in the fees on fees from the Lodestar. There was not a 20 percent reduction, per se. There was a reduction. Right. But that was just in the I'm sorry to interrupt you, counsel, but that was that was just in the rates. Right. So the rate.  Right. For example, the judge determined that Mr. Pearl's second declaration shouldn't have been considered and therefore cut our time in preparing that fair point. But they didn't. The judge didn't do the similar 20 percent reduction. I'm just curious, why isn't that error under the Supreme Court's precedent and Commissioner V. Jean? Because the the law is not that it would be error unless it's always 20 percent the same rate. The law, in fact, is the opposite. I know the footnote exists, but that was just a footnote in a decision that had no, you know, as we call it, it's dictated, had no specific, you know, effect on the holding of the case. And it's Supreme Court dicta, though not. I appreciate it. But it does go against the determinations by Hensley and Blum and others by the Supreme Court, which consistently hold that the determination on fee on fee should be done independently of the determination on the underlying case. Because, you know, it doesn't matter if you lost 20 percent on the underlying case. What you have to look at is was the time you spent in trying to get your fees a reasonable expenditure of time. And it would be quite arbitrary to simply apply the same percentage without looking at the specific work that was done and determining whether it was necessary or unnecessary. And the court went through that analysis and determined it was it was necessary. I'm not suggesting that a court would not have the discretion to award a similar percentage cut. There are many cases that exist that some of which counsel cited that that say that they do have that discretion. But none of those cases say that they must do that. And in this case, the court utilized her discretion in the appropriate manner. And, you know, counsel and the district have not presented any specific case authority for the proposition that unless a court does the same cut for both areas, that that would be an abuse of discretion and the standard is abuse of discretion has to be something that's clearly erroneous under the law based on the evidence before the court. And in this case, I maintain that that that doesn't exist. I want to make another point before my time runs out, that the court, I'm sorry, the district in their third appellate brief took the proposition or made the proposition that the districts that fee awards themselves do not establish the prevailing rate. And they cited to Blum for that proposition. And Blum says nothing of the sort. In fact, Blum recognizes that cases arising under fee shift shifting statutes often lack evidence of client payment of fees, but clearly stated that nevertheless, attorneys taking such cases are entitled to attorneys fees at the prevailing rate. Blum also stated that Congress did not intend the calculation of fee awards to vary depending on whether the plaintiff was represented by private counsel or by a nonprofit legal organization. So this idea that in a field where most clients are not able to pay parents lawyers by the hour, that somehow they should suffer because the parents attorneys and the parents themselves are not able to come up with a multitude of lawyers who are paid by their clients in this particular field. I think that's just to use counsel's word fantasy. There's nothing in the law that requires that kind of evidence and the lack of it would be abuse of discretion. There's nothing in the law that says that. And we had evidence. We had evidence that we presented through Mr. Pearl's declaration, through Ms. Sobel's declaration, through the Caporetta declaration, all of which talked about different rates, many of whom were above ours that are in the marketplace today by paying clients. And that certainly presents ample evidence before the court of actual paying clients, albeit not in the area of special education. That gives me a good segue to another point that counsel raised, which is that special is really not that complex. It's really, you know, junior varsity, if you will. And that's just nothing. There's no support in the law for that. Initially, the law is very clear that we don't compare when we make comparisons. We don't compare the types of cases. We don't compare the statutes that they're that they're brought under. We compare the type of services. What kind of what are the nature of the services? Legal research and special education is just as complex as in MedMoc cases or business disputes or in any other. You know, we do the same thing when we, you know, exercise our skills in conducting legal research. Same with preparation of briefing, oral argument, conducting trials, etc. The services is what the law says. The comparison has to be with not with the nature of the case and whether it has a jury or not. The 9th Circuit was clear on this and said in the Van Stuyte case that the relative simplicity or complexity of the case is reflected in the efficiency of the hours, not the lodestar rate of the attorney. So, you know, the district had a chance and did argue that we spent too much time in this case in terms of trying the case. And the court, you know, took that under consideration and determined, you know, reached a decision that I think is wholly supported by the record. So there's absolutely no showing of abuse of discretion in that regard. Lastly, I want to bring up a point that counsel made in the third brief with regard to the Kellogg data as we're calling it. The problem with the Kellogg data was not so much that she raised, she presented evidence of 2017 rates, although we think that's irrelevant to determination of the prevailing rate in 2019. You know, counsel defined prevailing as current and counsel is right. The law requires determination of prevailing rate, which is the current rate that's defined by Oxford as being the current rate. The problem with the Kellogg data was that she shared that with the district's expert, Mr. Cooper, who then prepared a declaration and represented to the court that those were the rates for 2019 at the time that the determination was being made. And that is why we went through the effort of presenting 11 declarations from some of the individuals that were quoted in that data, indicating that their 2019 rates were a lot higher than the rates in 2017. My time is up, but I just want to make the final point that the district admitted in its filings that Mr. Crook and I should be at the top of the range of attorneys in special education. And that top was $750, as shown by the evidence in the record. And we certainly, you know, in the determination we received from the court, we certainly came in under that. So we're well within the reasonableness range of attorney's fees. All right. Thank you, counsel. We'll now hear rebuttal from Mr. Green. OK, thank you, your honor. I wanted to I'm going to urge the court to look carefully at the record. The statements at the beginning of my learned opposing counsel, Mr. Tomassian's presentation about the rates he gets paid is completely not accurate. The only evidence in the record at all about what Mr. Tomassian was paid is that he are 825. And the only thing that says is in one case, one client paid him 14 percent of his fee. That's the only evidence. And if the court would like supplemental briefing, I'd be delighted to show the record on that. This whole other explanation. I get this all the time. I have that is all not in the record. That's completely inappropriate. And we urge the court to look carefully at the record. The only other evidence that my opposing counsel mentioned that would support an actual rate is an expert declaration that talks about rates paid to all sorts of large firms in Los Angeles. This doesn't give the court any guidance at all. This could be for any kind of work for any type of case. It is completely not relevant to the market here. It's very important. If you look at the Supreme Court case in Purdue versus Kenny, in particular, at page 557 and footnote seven. The Supreme Court is very careful to explain that we do not want to start giving windfall rates in these types of cases. And they compare the rates to the rates paid to counsel who work for the state. And they say it would be completely out of whack and judge the par. I would look at your community market rule over in the Sixth Circuit and your decision in Linneman as as a guide, because, you know, the circuits have to be aligned. And in that in that instance, the Sixth Circuit does not allow for rates to be way out of whack with what would what would be necessary to encourage representation in these cases. So we think this is a smokescreen. They don't want you to get past the reality that it's a foundation of sand. If this court does not look carefully at that, we will be back here again, I promise you, in a few years and rates will be fourteen hundred dollars an hour. And at that point, it'll be obvious what's going on. So with that, your honor, I have 40 seconds. If there's any questions from the panel. All right. Thank you, counsel. The case just argued will be submitted concludes our calendars this morning. Thank you. Thank you very much.
judges: Bea, Thapar, Collins